IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>DAVID GÓMEZ-OLMEDA,<br><br>Defendant. | **CRIM NO.** 3-73(RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant David Gómez-Olmeda's ("Defendant" or "Gómez-Olmeda") *Motion for Sentence Reduction Pursuant to 3582 (C)(1)(A)* [sic] ("*Motion for Compassionate Release*") and *Pro-Se Motion to Supplement/Amend His Motion for "Compassionate Release/Reduction of Sentence"* ("*Supplemental Motion*"). (Docket Nos. 352 and 364). For reasons set forth below, the pending motions are **DENIED WITHOUT PREJUDICE.**

I. PROCEDURAL BACKGROUND

On March 12, 2003, a Grand Jury returned a 6-count indictment charging Gómez-Olmeda and his co-defendants with robbing and murdering A.V.G., a confidential informant. (Docket No. 7). He was charged with: assault with intent to rob or robbery of mail, money or other property of the United States in violation of 18 U.S.C.

§§ 2114 and 2 (Count 1); robbery or attempted robbery of personal property of the United States in violation of 18 U.S.C. §§ 2112 and 2 (Count 2); use of a firearm in connection with a crime of violence resulting in death of a person in violation of 18 U.S.C. §§ 924(j) and 2 (Count 3); destruction or attempted destruction by fire of a vehicle owned, possessed or leased by the United States in violation of 18 U.S.C. §§ 844(f)(1) and 2 (d) (Count 4); injury or depredation against any property of the United States in violation of 18 U.S.C. §§ 1361 and 2 (Count 5); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 6). Id. at 1-5.

Defendant entered a straight plea of guilty as to all six counts on November 12, 2003. (Docket No. 156). Judgment was entered on September 29, 2004, and Gómez-Olmeda was sentenced to life in prison by Judge José A. Fusté. (Docket No. 250). If ever released, Defendant is subject to concurrent supervised release terms of five (5) years as to Counts 1 and 3, and three (3) years as to counts 2, 4, 5, and 6. Id.

On June 8, 2021, Defendant filed an initial *Motion for Compassionate Release*, followed by a *Supplemental Motion* on April 11, 2022. (Docket Nos. 352 and 364). In his initial motion, Gómez-Olmeda alleged that his age at the time the crimes were committed, his lack of criminal record aside from the offense of conviction

and a prior felony, and harsh prison conditions during the COVID-19 pandemic constitute extraordinary and compelling circumstances that warrant a reduction in his sentence. (Docket No. 352 at 8-10, 23). Gómez-Olmeda further argues that the amount of time he has already served is an extraordinary and compelling circumstance, and a sentence reduction would avoid sentencing disparities among similarly situated defendants. Id. at 8, 26. Additionally, Defendant asserts he is no longer a danger to the safety of others or the community as exemplified by his release plan and record of rehabilitation while incarcerated. Id. at 31.

On September 9, 2021, the United States of America (the "Government") opposed Defendant's petition on the grounds that Gómez-Olmeda lacks an extraordinary and compelling reason warranting release and still represents a significant danger to the safety of the community. (Docket No. 354 at 2). The Government argues Defendant did not justify his release because he did not assert he has a serious medical condition, and that the harsh prison conditions he experienced are not extraordinary, but rather faced by most Bureau of Prison ("BOP") inmates. Id. at 12. The Government also avers that the BOP took necessary measures to contain COVID-19 at Federal Correctional Institution ("FCI") Fairton, where Defendant has been incarcerated. Id. at 8.

On January 28, 2022, Defendant filed a reply to the Government's response alleging that the BOP's COVID-19 mitigation efforts have been insufficient. (Docket No. 363 at 3). Defendant also filed his *Supplemental Motion* on April 11, 2022, claiming that his neurological problems have led to additional back and nerve pain and providing evidence of his medical conditions and treatments while incarcerated. (Docket No. 364 at 2).

## II.  ANALYSIS

Gómez-Olmeda's request is denied for two reasons. First, he fails to present extraordinary and compelling circumstances justifying release. Second, he has not evinced he no longer poses a danger to society if released.

Typically, a court cannot modify a term of imprisonment once it is imposed. See 18 U.S.C. § 3582(c). However, it may grant compassionate release to a defendant subject to certain requirements. Id. § 3582(c)(1)(A).

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may not modify a final sentence unless a defendant has "fully exhausted all administrative rights to appeal a failure of" the BOP to bring a motion for reduction of sentence on his behalf or if thirty (30) days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Even if these conditions are met, there ***must still be*** "extraordinary and

compelling reasons" warranting a reduction. Id. § 3582(c)(1)(A)(i). Per First Circuit precedent, extraordinary and compelling reasons are "(A) medical reasons; (B) age; (C) family circumstances; and (D) '[o]ther [r]easons[.]'" Saccoccia, 10 F.4th at 7 (quoting U.S.S.G § 1B1.13).

In United States v. Ruvalcaba, the First Circuit addressed whether District Courts were bound by the Sentencing Guidelines Policy Statement[1] or measures for compassionate release. The First Circuit held that "district courts – when adjudicating prisoner-initiated motions for compassionate release – have discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." United States v. Ruvalcaba, 26 F.4th 14, 23 (1st Cir. 2022) (citation omitted). Yet, this does not mean that a district court's discretion is limitless, since its discretion "remains circumscribed by statutory standards, which obligate the district court to find a reason that is both 'extraordinary and

---

[1] On April 27, 2023, the United States Sentencing Commission submitted a series of amendments to the Guidelines Manual to Congress, including an amendment to U.S.S.G. § 1B1.13, the applicable policy statement for 18 U.S.C. § 3582(c)(1)(A). See Amendments to the Sentencing Guidelines, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf at 1-13 (last visited May 25, 2023). Absent congressional action to the contrary, the amendments will go into effect on November 1, 2023. Id. at 1. The forthcoming policy statement expands the list of extraordinary and compelling reasons justifying compassionate release, id. at 1-4, but even under this broader framework, Defendant's *Motion for Compassionate Release* and *Supplemental Motion* would still be denied.

compelling.'" Id. (citing United States v. Canales-Ramos, 19 F.4th 561, 566 (1st Cir. 2021)). Thus, the Court reviews the entire record to decide if Defendant has established extraordinary and compelling reasons for a sentence reduction. *See* United States v. Salinas-Acevedo, 2021 WL 5919786, at *2 (D.P.R. 2021).

Defendant exhausted administrative remedies by filing a request for compassionate release with the Warden of FCI Fairton, and more than thirty days had elapsed since said filing without a decision by the Warden. (Docket No. 352-2). Nevertheless, Gómez-Olmeda still failed to present circumstances warranting release.

**A. Defendant's age at the time of his offense and his criminal history category do not justify release.**

Defendant was twenty-two years old, and thus a legal adult, when he committed the offenses of conviction. (Docket No. 352 at 8). He makes no particularized arguments as to why his age at the time of his offenses warrants early release now. During his plea colloquy, Gómez-Olmeda also agreed with the Government's proffer that he was the "triggerman" and directed one of his codefendants to drive to his home with the dying victim. (Docket No. 170 at 79); *see* United States v. Sepulveda, 34 F.4th 71 at 76 (1st Cir. 2022) (upholding district court's conclusion that a defendant's youth was not an extraordinary and compelling reason for release when he was twenty years old at the age of his offense and was a leader, not a follower). Finally, none of the cases cited by

Criminal No. 03-073-1(RAM)                                              7

Defendant support the proposition "that a non-juvenile defendant's youth alone can constitute an extraordinary or compelling circumstance." *See* United States v. Razo, 2023 WL 3431623, at *8 (D. Me 2023) (noting the dearth of caselaw for said proposition).

Defendant also avers that his criminal history is minimal because he had only one prior felony conviction. (Docket No. 352 at 8). Yet the felony Gómez-Olmeda committed was homicide, for which he received probation. Id. at 2 n.2. As such, Defendant was placed in Criminal History category III at sentencing. (Docket No. 268 at 9). Further, he committed the offenses of conviction while on probation. Id. at 8. Instead of supporting his bid for release, Gómez-Olmeda's criminal history evinces he is a danger to society, as discussed further below.

**B. Neither the length of Defendant's sentence that he has served nor perceived sentencing disparities support release.**

Defendant further claims that the length of time he has served—approximately twenty years—contributes to extraordinary and compelling circumstances warranting release. (Docket No. 352 at 10). Gómez-Olmeda's Guidelines range was 360 months to life imprisonment, and he was sentenced to life. (Docket No. 268 at 47-48). At present, Defendant has only served about two-thirds of the lower end of his Guidelines range, a fact that weighs against his release.

Defendant also refers to the need to avoid unwarranted sentence disparities in support of his motion. (Docket No. 352 at 26). District courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Though national disparities are typically at the root of this concern, the First Circuit has also evaluated disparities between the sentences of codefendants. United States v. Grullon, 996 F.3d 21, 35 (1st Cir. 2021). Regarding national disparities, "[i]n the ordinary course, a sentence within the guidelines is likely to reflect the national standard," as was the case here. United States v. Mueffelman, 470 F.3d 33, 40-41 (1st Cir. 2006). Additionally, "[a] well-founded claim of disparity," requires a defendant to compare apples to apples. United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005)). Though Defendant references several cases in his motion, none involve similarly situated defendants. For example, unlike Gómez-Olmeda, they all had underlying medical conditions that placed them at greater risk during the COVID-19 pandemic and constituted extraordinary and compelling reasons for compassionate release.[2]

---

[2] *See* United States v. Perez, 2021 WL 837425, at *3 (D. Conn. 2021); United States v. Quinones, 2021 WL 797835, at *2 (S.D.N.Y. 2021); United States v. Greene, 516 F. Supp. 3d 1, 23 (D.D.C. 2021); United States v. Bass, 514 F. Supp. 3d 977, 982 (E.D. Mich. 2021), *rev'd*, 17 F.4th 629 (6th Cir. 2021); United States v. Douglas, 2021 WL 214563, at *4 (D.D.C. 2021); United States v. Underwood, 2021 WL 3204834, at *5-6 (S.D.N.Y. 2021); United States v. Rios,

Turning to codefendant disparities, Defendant's proposed cure for a perceived disparity is immediate release, or, in the alternative, a sentence of 300 to 360 months' imprisonment. (Docket No. 352 at 30). If he were released today, Defendant would have served approximately 243 months' imprisonment.[3] This release would cause, rather than remedy, a sentencing disparity between Gómez-Olmeda and at least two of his codefendants. Codefendants Angel Forteza-Garcia and Miguel Forteza-Garcia were both sentenced at a total offense level of 40 and Criminal History category II, resulting in a Guidelines sentencing range of 324 to 405 months' imprisonment. *See* Docket Nos. 234 at 19 and 233 at 25. Both codefendants were sentenced to 324 months and are still serving that sentence. If Gómez-Olmeda obtained a sentence reduction, he would serve a lower or similar sentence compared to two of his codefendants who had lower total offense and criminal history category levels: "a clear sentencing disparity." United States v. Miranda, 2021 WL 4592528 at *9 (D.P.R. Aug. 30, 2021).

**C. Prison conditions at FCI Fairton during COVID-19 do not justify release.**

Defendant argues that the "harsh prison conditions" during the COVID-19 pandemic are extraordinary and compelling

---

2020 WL 7246440, at *3 (D. Conn. 2020); United States v. Rodriguez, 492 F.Supp.3d 306, 310-311 (S.D.N.Y. 2020).
[3] Defendant was arrested on March 8, 2003. (Docket No. 1). He has been detained since.

circumstances justifying release, as they have diminished his ability to meet family members, attend programming, and receive materials from correspondence courses. (Docket No. 352 at 24). The Court is not convinced that these conditions warrant compassionate release as to Gómez-Olmeda, since the BOP imposed them to mitigate the spread of COVID-19 and protect the health of inmates and staff and almost all BOP inmates were subject to the same conditions. *See* United States v. Beauregard, 2021 WL 2080019, at *8 (D. Me. May 24, 2021) (explaining need for defendant to explain why he should be given special or unique treatment when every inmate is subject to the BOP's COVID-19 policies). Additionally, these onerous conditions are no longer in place: FCI Fairton is currently operating at "Level 1", meaning that visitation is at "[n]ormal operations" and programming is at "[n]ormal capacity participation".[4]

The Court also notes Gómez-Olmeda is fully vaccinated with the Pfizer vaccine. (Docket No. 358 at 1). Courts generally deny motions for compassionate release when a defendant has received the COVID-19 vaccine, as it reduces the risk of infection and

---

[4] *See* FCI Fairton, https://www.bop.gov/locations/institutions/fai/index.jsp (last visited May 24, 2023); COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited May 24, 2023).

severe illness from COVID-19. *See* United States v. Bueno-Beltran, 2022 WL 1442008, at *3 (D.P.R. 2022) (collecting cases).

**D. Defendant's medical conditions do not justify release.**

Defendant also alleges his neurological problems, back pain, and nerve pain contribute to extraordinary and compelling circumstances that warrant release. (Docket No. 364 at 2). However, the BOP medical records provided by Gómez-Olmeda reflect continuous and responsive medical treatment that includes regular clinical visits and medication. (Docket No. 364-1). Defendant is being treated regularly and his medical conditions are insufficient to merit compassionate release. *See* United States v. Pacheco-Montemoino, 2022 WL 897124, at *3 (D.P.R. 2022) (finding no extraordinary and compelling reasons justifying release when defendant was being treated regularly).

**E. Defendant has not shown he is not a danger to society.**

The Court is also not convinced that Defendant is no longer a danger to society. Defendant has certainly taken steps towards his rehabilitation while incarcerated. Commendably, Gómez-Olmeda earned his GED while incarcerated, has included several certificates for educational, vocational, and self-improvement programs, and has gathered numerous letters of support from BOP staff, family members, and others. (Docket Nos. 352-3, 352-4, 352-5, 352-13—352-25). These efforts are laudable. However,

rehabilitation alone is insufficient to warrant Defendant's release, particularly with his criminal record. *See* Sepulveda, 34 F.4th at 77-76.

Defendant was convicted of serious crimes, including the use of a firearm resulting in the murder of a confidential informant. As already discussed, he was the triggerman in these offenses. Furthermore, Gómez-Olmeda has had two disciplinary infractions while incarcerated: he committed mail abuse in 2009 and was in an unauthorized area in 2017. (Docket No. 352-11). Defendant minimizes these disciplinary infractions by categorizing them as "minor incidents." (Docket No. 352 at 15). The Court also notes Gómez-Olmeda pled guilty while on probation for a previous homicide. Defendant's motion and proposed release plan does not address these concerns, and releasing him now would send the wrong message to both Defendant and to society. Thus, a sentence reduction would not properly reflect the seriousness of his offenses, promote respect for the law, or provide the adequate deterrence to criminal conduct required by 18 U.S.C. § 3553. *See* Bueno-Beltran, 2022 WL 1442008, at *3.

### III. CONCLUSION

Given that extraordinary and compelling circumstances are lacking, Defendant David Gómez-Olmeda's *Motion for Sentence Reduction Pursuant to 3582 (C)(1)(A)* and *Pro-Se Motion to*

*Supplement/Amend His Motion for "Compassionate Release/Reduction of Sentence"* (Docket Nos. 352 and 364) are **DENIED WITHOUT PREJUDICE.**

In San Juan, Puerto Rico, this 25th day of May 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
