IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>[1] DAVID GÓMEZ-OLMEDA,<br><br>Defendant. | CRIMINAL NO. 3-73-1(RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant David Gómez-Olmeda ("Defendant" or "Gómez-Olmeda") *Motions for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2)/U.S.S.G. 1B1.10 and 18 U.S.C. (C)(1)(A)* ("*Motion*"), made pursuant to Amendment 821 to the United States Sentencing Guidelines. (Docket No. 376). For the reasons set forth below, the *Motion* is **DENIED**.

### I.    PROCEDURAL BACKGROUND

On March 12, 2003, a Grand Jury returned a 6-count indictment charging Mr. Gómez-Olmeda and his co-defendants with robbing and murdering A.V.G., a confidential informant. (Docket No. 7). Defendant was charged with: assault with intent to rob or robbery of mail, money or other property of the United States in violation of 18 U.S.C. §§ 2114 and 2 (Count 1); robbery or attempted robbery

of personal property of the United States in violation of 18 U.S.C. §§ 2112 and 2 (Count 2); use of a firearm in connection with a crime of violence resulting in death of a person in violation of 18 U.S.C. §§ 924(j) and 2 (Count 3); destruction or attempted destruction by fire of a vehicle owned, possessed or leased by the United States in violation of 18 U.S.C. §§ 844(f)(1) and 2 (d) (Count 4); injury or depredation against any property of the United States in violation of 18 U.S.C. §§ 1361 and 2 (Count 5); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 6). Id. at 1-5.

Defendant entered a straight plea of guilty as to all six counts on November 12, 2003. (Docket No. 156). Judgment was entered on September 29, 2004, and Mr. Gómez-Olmeda was sentenced to life in prison by Judge José A. Fusté. (Docket No. 250).[1] If ever released, he is subject to concurrent supervised release terms of five (5) years as to Counts 1 and 3, and three (3) years as to counts 2, 4, 5, and 6. Id.

Defendant timely appealed, questioning the validity of his guilty plea and of his sentence. See (Docket No. 252). The First Circuit rejected Mr. Gómez-Olmeda's arguments and affirmed Judge Fusté's sentence. See United States v. Forteza-García, 2006 WL 4399664 (1st Cir. 2006); (Docket No. 275).

---

[1] The case was transferred to the undersigned on March 13, 2020. (Docket No. 333).

After his failed direct appeal from Judge Fusté's sentence, Mr. Gómez-Olmeda has filed successive and unsuccessful Section 2255 petitions and a motion for compassionate release. *See* (Docket Nos. 267, 291, 346, and 370). For brevity's sake, the Court summarizes neither Defendant's arguments nor their disposition here.

On February 27, 2024, Mr. Gómez-Olmeda filed his *Motion Re: Amendment 821*. (Docket No. 376). The motion was referred to United States Magistrate Judge Bruce J. McGiverin pursuant to the provisions of the *Administrative Directive Regarding Amendment 821*. (Docket No. 377); *see also* 23-mc-565 (Docket No. 1). On May 30, 2024, Magistrate Judge McGiverin issued a *Report and Recommendation* ("*R&R*") concluding that Mr. Gómez-Olmeda may be eligible for a sentence reduction under Amendment 821. (Docket No. 387). One week later, Defendant and the United States of America (the "Government")[2] filed a stipulation recommending that Mr. Gómez-Olmeda's sentence be reduced to 360 months. (Docket No. 390).

## II. LEGAL STANDARD.

18 U.S.C. 3582(c)(2) provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on

---

[2] The Court also notes that the record does not reflect whether the Government consulted with the victim's family prior to making its recommendation. The Government is reminded that it may have continuing obligations to crime victims in resentencing proceedings. *See* United States v. Holden, 2023 WL 8629127, at *1 n.2 (S.D.W. Va. 2023) (regarding Amendment 821); United States v. Slater, 547 F. Supp. 3d 58, 79 (D. Me. 2021) (exercising court's discretion to require victim notification in compassionate release proceeding).

> a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Id.

As the text of the statute makes plain, evaluation of a sentence reduction under Section 3582(c)(2) requires that the Court determine "if a retroactive amendment to the Sentencing Guidelines indeed lowered a defendant's guidelines range and whether a reduction is consistent with the applicable policy statements." United States v. Llanos Cortes, 2023 WL 8372815, at *2 (S.D. Fla. 2023), *appeal dismissed sub nom*. United States v. Cortes, 2024 WL 1208517 (11th Cir. 2024). It also requires that the Court "consider the § 3553(a) factors to determine if it will exercise its discretion to reduce that defendant's sentence." Id.

Pursuant to the policy statement in United States Sentencing Guideline § 1B1.10, a sentence reduction is not authorized if the guideline amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). The policy statement further provides that proceedings under Section 3582(c) and the policy statement "do not constitute a full resentencing of the defendant." Id.

§ 1B1.10(a)(3). Unless substantial assistance to the authorities was provided, the Court cannot reduce a Defendant's sentence "to a term that is less than the minimum of the amended guideline range determined [under Amendment 821]." Id. § 1B1.10(b)(2)(A)-(B). Also, the Court cannot reduce a sentence to a term that is "less than the term of imprisonment the Defendant has already served." Id. § 1B1.10(b)(2)(C).

### III. ANALYSIS

**A. Eligibility:**

Mr. Gómez-Olmeda's eligibility is not in dispute. According to the unobjected-to *R&R*, Defendant received four (4) criminal history points which placed him at a Criminal History Category of III. (Docket No. 387 at 3). Two (2) of the points were for committing the offenses of conviction in this case while under a criminal justice sentence. Id. Under Amendment 821, Defendant would not have received those two (2) points, resulting in a Criminal History Category of II. That modified Criminal History Category of II, coupled with a Total Offense Level of 40, yields an amended Guideline Sentencing range of 324-405 months.

**B. Section 3553(a) Factors:**

Section 3553(a) lays out the factors a court must consider when imposing sentence. These factors include but are not limited to the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence

imposed to, among other things, "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1)-(2). Having considered these factors, the Court finds that a sentence reduction is not warranted in this case.

First, Defendant's history and characteristics weigh against a sentence reduction. The offenses of conviction in this case are neither Mr. Gómez-Olmeda's first brush with the law nor his first violent offense resulting in the illegal taking of another person's life. On July 13, 1999, Defendant was convicted of two felony offenses before the Court of First Instance of the Commonwealth of Puerto Rico, Carolina Superior Part. (Docket No. 203 ¶¶ 21-23). These felonies pertained to illegally possessing and transporting a stolen browning pistol. Id.

On May 3, 2001, and before the Court of First Instance of the Commonwealth of Puerto Rico, Carolina Superior Part, Mr. Gómez-Olmeda was sentenced for homicide in a case that is just as harrowing and horrifying as the case at bar. Id. ¶ 23. In that offense, the Defendant hit his victim with a tube, after which other individuals assisting Mr. Gómez-Olmeda arrived and kicked the victim in the face, causing the victim's death. Id.

Second, the nature and circumstances of the offenses in the case at bar are serious, appalling, and also weigh against a sentence reduction. According to the unobjected-to Offense Conduct

section of the Pre-Sentence Investigation Report ("PSR"), Mr. Gómez-Olmeda was targeted for investigation as a drug and firearms trafficker. Id. ¶ 4. His co-defendants Angel Forteza-García and Miguel Forteza-García were targeted as well. Id. From February 23, 2023 through March 4, 2023, the confidential source and eventual victim, A.V.G., communicated with Mr. Gomez-Olmeda to schedule a purchase of a handgun. Id.

On March 4, 2003, A.V.G. met with Defendant to negotiate the purchase of a Glock pistol. Id. ¶ 5. A.V.G. had $1,400 and a recording device on him. Id. Mr. Gómez-Olmeda induced A.V.G. to get into a van, after which he also entered the van, pulled a weapon, and started firing at A.V.G. Id. ¶ 6. A video referenced in the PSR depicts A.V.G. trying to protect himself from the shots with his arms to no avail. Id. The video also depicts that as A.V.G. was struggling, Mr. Gómez-Olmeda and his co-defendants moved the victim within the van. Id. ¶ 7. They also rummaged through the victim's pockets as he lay dying. Id. They drove to Mr. Gómez-Olmeda's house with the dying A.V.G. and again searched his pockets. Id. ¶¶ 7-8. The three co-defendants took the money which had been provided by the FBI. Id. ¶ 8. They also found the recording device. Id. Finally, they poured gasoline over A.V.G.'s body and the van and to obliterate the evidence. Id.

While imposing sentence, Judge Fusté found that, having seen the video, he was "**convinced that the defendant actively and**

**intelligently participated in the murder of this person [A.V.G.].**" (Docket No. 268 at 48). Judge Fusté further found that "**the horrible crime he committed, the way that it was committed, the way in which the victim was treated, the way in which the victim -- the body was addressed after this whole thing happened are different, are additional factors that lead me to believe that it was simply a planned, horrible unacceptable murder of a human being.**" Id.

Turning to the victim, A.V.G. was a cooperating witness for the FBI. (Docket No. 170 at 74). He and Mr. Gómez-Olmeda had grown up together. (Docket No. 203 ¶ 13).

All told, a sentence reduction is unwarranted given the Defendant's history and characteristics and the nature and circumstances of the offense. A sentence reduction would not provide for just punishment, promote respect for the law, or protect the public from further crimes by the Defendant as required by 18 U.S.C. § 3553. *See also* United States v. Gómez-Olmeda, 2023 WL 3642485, at *3-*5 (D.P.R. 2023) (assessing the section 3553(a) factors and denying Defendant's compassionate release motion).

### IV.  CONCLUSION

The Court will not disturb Judge Fusté's original sentencing calculus, which was upheld on appeal. As the First Circuit has stated:

> [S]entencing under an advisory guidelines regime is more art than science. A sentencing judge must weigh a variety of considerations . . . and formulate a sentence that is responsive to the facts. There is normally no single appropriate sentence but, rather, a range of reasonable sentencing options.

<u>United States v. Anonymous Defendant</u>, 629 F.3d 68, 78 (1st Cir. 2010).

For the foregoing reasons, Defendant David Gómez-Olmeda's *Motions for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2)/U.S.S.G. 1B1.10 and 18 U.S.C. (C)(1)(A)* at Docket No. 376 is **DENIED**.

In San Juan, Puerto Rico, this 21st day of August 2024.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
